## PROMISSORY NOTE

**$19,880,000.00**                                                                                    February 18, 2022

FOR VALUE RECEIVED, the undersigned **NORDICA LANDING, LLC**, a Florida limited liability company ("***Borrower***"), hereby promises to pay to the order of **BRAVO BRIDGE FUND LLC,** a Delaware limited liability company, with an address of 750 Lexington Avenue, New York, NY 10022 ("***Lender***"), its successors and assigns as holder of this Note or, if this Note has then been endorsed "to bearer," to the bearer of this Note (Lender, its said successors and assigns, and any such bearer, being hereinafter sometimes referred to collectively as the "***Holder***"), at Lender's said address or at such other place or to such other person as may be designated in writing to Borrower by Holder, the principal sum of up to **Nineteen Million Eight Hundred Eighty Thousand and no/00 Dollars ($19,880,000.00)** (the "***Loan***"), together with interest on the unpaid balance thereof at the rate hereinafter set forth, on the terms and subject to the conditions which are hereinafter set forth.

This Promissory Note (this "***Note***") and the other documents, certificates, instruments and agreements executed by Borrower or others in connection with the Loan or to otherwise evidence or secure the Loan, and all renewals, supplements, or amendments thereto, are collectively referred to as the "***Loan Documents***".  Capitalized terms used herein without definition shall have the meanings ascribed to such terms in that certain Loan Agreement of even date herewith by and between Borrower and Lender (the "***Loan Agreement***") or in the Mortgage (as defined below).

1. **Interest Rate**. Capitalized terms used but not defined in this Section 1 shall have the meanings set forth on Schedule 1 attached hereto or in the Loan Agreement.

    (a)     Subject to the limitations hereinafter set forth, the disbursed and unpaid principal balance of the indebtedness hereby evidenced shall bear interest prior to maturity at an interest rate per annum equal to the sum of the following (such sum, the "***Interest Rate***"): the Adjustable Rate in effect on the last business day of the preceding calendar month, plus the Margin.  Interest shall be paid in arrears and shall be computed on the basis of a 360-day year and actual number of days elapsed for any whole or partial month in which interest on this Note is being calculated and shall be charged on the principal balance outstanding from time to time.

    (b)     The initial Interest Rate shall be 3.45%, and such initial Interest Rate shall accrue from the date hereof through and including March 31, 2022. Thereafter, the Interest Rate shall be reset on the last Business Day of each month, effective on the first day of the next calendar month (irrespective of whether such day is a Business Day) (the "***Rate Change Date***").

    (c)     Notwithstanding anything herein to the contrary, at no time shall the Interest Rate exceed the maximum effective contract rate of interest that Holder may from time to time lawfully charge (the "***Maximum Rate***"), and if at any time the Interest Rate as calculated hereunder would exceed the Maximum Rate, then the Maximum Rate shall apply.

(d) Effective immediately upon the occurrence of a Default or an Event of Default, the disbursed and unpaid principal balances of the indebtedness hereby evidenced shall bear interest prior to maturity at a fixed rate per annum equal to the maximum allowable rate of interest that Holder may from time to time lawfully charge (the "***Default Rate***").

(e) If an Index Transition Event occurs, then Lender shall give written notice thereof to Borrower as soon as practicable thereafter, which notice shall contain the identity of the Index Transition Event, and if known at such time, the Alternative Rate Index, the Alternative Rate Spread Adjustment and the Index Replacement Date. If such notice is given, the Adjustable Rate with respect to the Loan with respect to any Rate Change Date after the Index Replacement Date shall be determined based on the Alternative Rate Index, and the Margin shall be the Alternative Rate Spread; provided that such Adjustable Rate shall not be less than 10 basis points (0.10%). Within ten (10) days after request by Lender, Borrower shall execute, acknowledge and deliver, at its cost and expense, all further acts, deeds, conveyances, assignments, financing statements, transfers, documents, agreements, assurances, and such other instruments as Lender may reasonably require from time to time in order to make such technical, administrative or operational changes (including changes to the Rate Change Date, timing and frequency of determining rates and making payments of interest, and other administrative matters) that Lender decides may be appropriate to reflect the adoption of an Alternative Rate Index in a manner as Lender determines is reasonably necessary to implement the Alternative Rate Index.

2. **Payments**.

(a) Borrower hereby agrees to pay interest on the Loan at the Interest Rate, on the first day of each month, commencing April 1, 2022, on each date required hereunder and in the Loan Agreement, and on the Maturity Date.

(b) If not sooner prepaid, on March 1, 2024 (or on any earlier date on which the unpaid principal balance of this Note becomes due and payable, by acceleration or otherwise) (the "***Maturity Date***"), Borrower shall pay to Holder the outstanding principal balance, together with all accrued and unpaid interest.

(c) Subject to the provisions of the Loan Agreement, if at any time Lender receives, from Borrower or otherwise, any amount applicable to the Indebtedness which is less than all amounts due and payable at such time, then Lender shall apply that payment to amounts then due and payable in any manner and order determined by Lender in Lender's discretion. Neither Lender's acceptance of an amount which is less than all amounts then due and payable nor Lender's application of such payment in the manner authorized in the immediately preceding sentence shall constitute or be deemed to constitute either a waiver of the unpaid amounts or an accord and satisfaction. Notwithstanding the application of any such amount to the Indebtedness, Borrower's obligations under the Loan Documents shall remain unchanged except that the Indebtedness shall be reduced by and to the extent of any of Borrower's prepayments of this Note as permitted by the terms hereof and the Loan Agreement and any payments applied by Lender pursuant to this Section.

Anything in this Note to the contrary notwithstanding, the entire unpaid balance of the principal amount hereof and all interest accrued thereon, to and including the Maturity Date (including interest accruing at the Default Rate), and all Late Fees (as defined below) shall, unless sooner paid, and except to the extent that payment thereof is sooner accelerated, be and become due and payable on the Maturity Date. The unpaid principal balance shall continue to bear interest after the Maturity Date at the Default Rate until and including the date on which it is paid in full.

3. **Extension Option**. Borrower may extend the Maturity Date two (2) times for a period of six (6) months each (the "*Extension Option*") upon Borrower's satisfaction of the following conditions, for each exercise of the Extension Option:

(a) Borrower shall have delivered to Lender written notice of its intent to exercise the Extension Option no later than sixty (60) days prior to the Maturity Date;

(b) no Default or Event of Default shall have occurred under the terms of the Loan Documents;

(c) Borrower shall have delivered to Lender evidence satisfactory to Lender in its sole commercially reasonable discretion that Borrower is in compliance with the Loan to Value requirements contained in the Loan Agreement;

(d) Borrower shall have paid to Lender an extension fee of one-quarter of one percent (0.25%) of the outstanding principal balance of the Loan on the Maturity Date; and

(e) Borrower shall have completed all critical and non-critical repairs, pursuant to the Property Inspection Report prepared by Nova Group GBC and dated January 11, 2022 obtained by Lender in connection with the closing.

Upon Borrower's satisfaction of the foregoing conditions, the Maturity Date shall be extended, and the term "Maturity Date" as used herein and otherwise in the Loan Documents shall be deeded to mean the extended Maturity Date.

4. **Method of Payment**. Each payment of the Loan Obligations shall be paid directly to Holder in lawful tender of the United States of America. Each such payment shall be paid by 1:00 p.m. New York, New York time on the date such payment is due, unless such date is a Saturday, Sunday or legal holiday, in which case such payment shall then be due on the first day after such date that is not a Saturday, Sunday or legal holiday. Any payment received after 1:00 p.m. New York, New York time shall be deemed to have been received on the immediately following day that is not a Saturday, Sunday or legal holiday.

5. **Late Fees**. If any payment of interest or principal payable under this Note is not made within three (3) calendar days after the date on which such payment becomes due and payable (including applicable grace periods), Borrower shall thereupon automatically become obligated immediately to pay to Holder a late payment charge, for each month during which a payment delinquency exists, equal to the lesser of five percent (5%) of the amount of such payment or the maximum amount permitted by applicable law ("*Late Fee*") to defray the expenses incurred by Holder in handling and processing such delinquent payment and to compensate Holder for the loss of use of such delinquent payment.

6. **Prepayment**. The principal amount of the Loan may be prepaid in full, but not in part, on any Business Day upon not less than thirty (30) days advance written notice to Holder; provided that the prepayment is accompanied by all accrued interest and all other charges and fees due and owing to Holder under the Loan Documents. If any advances made by Holder under the terms of any instruments securing this Note have not been repaid, any payments made may, at the option of Holder, be applied, first, to repay such advances, and interest thereon, with the balance, if any, applied as set forth in the Loan Agreement.

7. **Reimbursement for Increased Costs**. If any law or guideline or interpretation or application thereof by any governmental authority charged with the interpretation or administration thereof or compliance with any request or directive of any governmental authority (whether or not having the force of law) now existing or hereafter adopted:

(a) subjects Holder to any Tax (as defined in the Loan Agreement) or changes the basis of taxation with respect to this Note, the Loan or payments by Borrower of principal, interest or other amounts due from Borrower hereunder or thereunder (except for taxes on the overall net income or overall gross receipts of Holder and capital, franchise, excise, income and similar taxes imposed as a result of a present or former connection between the jurisdiction of the governmental authority imposing such tax on Holder, provided that this exclusion shall not apply to a connection arising solely from Holder having executed, delivered, performed its obligations under, or received a payment under, or enforced, any of the Loan Documents); or

(b) imposes upon Holder any other condition or expense with respect to this Note, the Loan or its making, maintenance or funding of any part of the Loan or any security therefor, and the result of any of the foregoing is to increase the cost to, reduce the income receivable by, or impose any expense (including, without limitation, loss of margin) upon, Holder with respect to the Note, or the making, maintenance or funding of any part of the Loan, by an amount which Holder reasonably deems to be material;

then, in either or all of such events, Holder may from time to time notify Borrower of the amount determined in good faith (using any averaging and attribution methods) by Holder (which determination shall be conclusive) to be necessary to compensate Holder for such increase, reduction or imposition and, if Borrower is by law prohibited from paying any such amount that is determined by Holder in its commercially reasonable discretion to be material, Holder may elect to declare the unpaid principal balance hereof and all interest accrued thereon immediately due and payable. Such amount shall be due and payable by Borrower to Holder within thirty (30) days after such notice is given.

8. **Security**. The debt evidenced by this Note is secured by, among other things, a Mortgage, Absolute Assignment of Leases and Rents, Security Agreement and Fixture Filing of even date herewith (the "*Mortgage*") granting a first lien on a 108-unit multifamily property, which is located in Daytona Beach, Volusia County, Florida.

9. **Default**.

(a) <u>Acceleration upon an Event of Default</u>.  Anything in this Note to the contrary notwithstanding, if Borrower shall fail to make payment of any installment of principal or interest, as above provided, and such failure shall continue unremedied for a period of ten (10) calendar days, or upon any default in the terms and provisions of any of the Loan Documents (each of which is referred to herein as an "***Event of Default***"), Holder may, in the exercise of its sole and absolute discretion, accelerate the debt evidenced by this Note, in which event the entire outstanding principal balance and all interest and fees accrued thereon including interest at the Default Rate shall immediately be and become due and payable without further notice.

(b) <u>No Impairment of Rights</u>.  Nothing in this Section shall be deemed in any way to alter or impair any right which Holder has under this Note or any other Loan Document, at law or in equity, to accelerate such debt on the occurrence of any Event of Default provided herein or therein, whether or not relating to this Note.

(c) <u>Certain Releases</u>.  Borrower hereby releases, to the extent permitted by applicable law, all rights of redemption, exemption, appeal, stay or execution, inquisition and other rights to which Borrower may otherwise be entitled under the laws of the United States of America or of any state or possession of the United States of America now in force and which may hereafter be enacted.

10. **Costs of Enforcement**.  Borrower shall pay to Holder on demand the amount of any and all expenses incurred by Holder (a) in enforcing its rights hereunder or under the Loan Documents, (b) as the result of the occurrence of an Event of Default, including, without limitation, the expenses of collecting any amount owed hereunder, and attorneys' fees incurred by Holder in connection with such default, whether suit be brought or not, and (c) in protecting the security for the Loan and Borrower's obligations under the Loan Documents.  Such expenses shall be added to the principal amount hereof, shall be secured by the Loan Documents and shall accrue interest at the Default Rate.

11. **Borrower's Waiver of Certain Rights**.  Borrower and any endorser, guarantor or surety hereby waives the exercise of any and all exemption rights which it holds at law or in equity with respect to the debt evidenced by this Note, and of any and all rights which it holds at law or in equity to require any valuation, appraisal or marshalling, or to have or receive any presentment, protest, demand and notice of dishonor, protest, demand and nonpayment as a condition to Holder's exercise of any of its rights under this Note or the Loan Documents.

12. **Extensions**.  The Maturity Date and/or any other date by which any payment is required to be made hereunder may be extended by Holder from time to time in the exercise of its sole discretion, without in any way altering or impairing Borrower's or any guarantor's liability hereunder.

13. **General**.

(a) <u>Applicable Law</u>.  This Note shall be given effect and construed by application of the laws of the State of New York (without regard to the principles thereof governing conflicts of laws), and any action or proceeding arising hereunder, and each of

Holder and Borrower submits (and waives all rights to object) to non-exclusive personal jurisdiction in New York County, the State of New York, for the enforcement of any and all obligations hereunder, except that if any such action or proceeding arises under the Constitution, laws or treaties of the United States of America, or if there is a diversity of citizenship between the parties thereto, so that it is to be brought in a United States District Court, it shall be brought in the United States District Court for the Southern District of New York or any successor federal court jurisdiction. Borrower and Guarantor hereby expressly waive any defense of forum non conveniens.

(b) <u>Headings</u>. The headings of the Sections, subsections, paragraphs and subparagraphs hereof are provided herein for and only for convenience of reference, and shall not be considered in construing their contents.

(c) <u>Construction</u>. As used herein, all references made (i) in the neuter, masculine or feminine gender shall be deemed to have been made in all such genders, (ii) in the singular or plural number shall be deemed to have been made, respectively, in the plural or singular number as well, and (iii) to any Section, subsection, paragraph or subparagraph shall, unless therein expressly indicated to the contrary, be deemed to have been made to such Section, subsection, paragraph or subparagraph of this Note.

(d) <u>Severability</u>. No determination by any court, governmental body or otherwise that any provision of this Note or any amendment hereof is invalid or unenforceable in any instance shall affect the validity or enforceability of (i) any other such provision or (ii) such provision in any circumstance not controlled by such determination. Each such provision shall be valid and enforceable to the fullest extent allowed by, and shall be construed wherever possible as being consistent with, applicable law.

(e) <u>No Waiver</u>. Holder shall not be deemed to have waived the exercise of any right which it holds hereunder unless such waiver is made expressly and in writing. No delay or omission by Holder in exercising any such right (and no allowance by Holder to Borrower of an opportunity to cure a default in performing its obligations hereunder) shall be deemed a waiver of its future exercise. No such waiver made as to any instance involving the exercise of any such right shall be deemed a waiver as to any other such instance, or any other such right. Further, acceptance by Holder of all or any portion of any sum payable under, or partial performance of any covenant of, this Note, the Mortgage or any of the other Loan Documents, whether before, on, or after the due date of such payment or performance, shall not be a waiver of Holder's right either to require prompt and full payment and performance when due of all other sums payable or obligations due thereunder or hereunder or to exercise any of Holder's rights and remedies hereunder or thereunder.

(f) <u>Waiver of Jury Trial; Service of Process; Court Costs</u>. BORROWER, GUARANTOR, AND HOLDER BY ITS ACCEPTANCE HEREOF, HEREBY WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH SUCH BORROWER, GUARANTOR, OR HOLDER MAY BE PARTIES ARISING OUT OF, IN CONNECTION WITH, OR IN ANY WAY PERTAINING TO, THIS NOTE AND/OR ANY OF THE OTHER LOAN DOCUMENTS. IT IS AGREED AND UNDERSTOOD

THAT THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY OF ALL CLAIMS AGAINST ALL PARTIES TO SUCH ACTIONS OR PROCEEDINGS, INCLUDING CLAIMS AGAINST PARTIES WHO ARE NOT PARTIES TO THIS NOTE.  THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY BORROWER AND GUARANTOR UPON CONSULTATION WITH COUNSEL OF THEIR CHOICE, AND BORROWER AND GUARANTOR HEREBY REPRESENT THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT.  BORROWER AND GUARANTOR FURTHER REPRESENTS AND WARRANTS THAT IT HAS BEEN REPRESENTED IN THE SIGNING OF THIS NOTE AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY INDEPENDENT LEGAL COUNSEL SELECTED OF ITS OWN FREE WILL, AND THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL.

(g) __Offset__.  Upon the occurrence of an Event of Default, Holder may setoff against any principal and interest owing hereunder, any and all credits, money, stocks, bonds or other security or property of any nature whatsoever on deposit with, or held by, or in the possession of, Holder, to the credit of or for the account of Borrower, without notice to or consent of Borrower or Guarantor.

(h) __Non-Exclusivity of Rights and Remedies__.  None of the rights and remedies herein conferred upon or reserved to Holder is intended to be exclusive of any other right or remedy contained herein or in any of the other Loan Documents and each and every such right and remedy shall be cumulative and concurrent, and may be enforced separately, successively or together, and may be exercised from time to time as often as may be deemed necessary or desirable by Holder.

(i) __Incorporation by Reference__.  All of the agreements, conditions, covenants and provisions contained in each of the Loan Documents are hereby made a part of this Note to the same extent and with the same force and effect as if they were fully set forth herein.  Borrower covenants and agrees to keep and perform, or cause to be kept and performed, all such agreements, conditions, covenants and provisions strictly in accordance with their terms.

(j) __Joint and Several Liability__.  If the Borrower consists of more than one person and/or entity, each such person and/or entity agrees that its liability hereunder is joint and several.  The obligations under this Note shall be binding upon Borrower's successors and assigns.

(k) __Business Purpose__.  Borrower represents and warrants that the Loan is being obtained solely for the purpose of acquiring or carrying on a business, professional or commercial activity and is not for personal, agricultural, family or household purposes.

(l) __Interest Limitation__.  Notwithstanding anything to the contrary contained herein or in the Mortgage or in any other of the Loan Documents, it is the intention of

Borrower and Holder to comply strictly with all applicable usury laws, and accordingly in no event shall the Holder be permitted to receive, collect or apply as interest any interest, fees, charges or other payments equivalent to interest hereunder or under any of the Loan Documents in excess of the lawful maximum effective rate of interest permitted to be paid under applicable laws from time to time then in effect.  Without limiting the generality of the foregoing, in the event that the interest, fees, charges or other payments equivalent to interest payable hereunder or under any Loan Document results in an effective rate of interest higher than that lawfully permitted to be paid, then such charges shall be reduced by the sum sufficient to result in an effective rate of interest permitted, and any amount which would but for this provision exceed the highest lawful rate already received and held by Holder shall be applied to a reduction of principal and not to the payment of interest.  If the principal amount of the indebtedness evidenced hereby together with all lawful interest thereon and all lawful fees and charges are paid in full, then the excess shall be returned to Borrower or such other person lawfully entitled thereto.  Borrower agrees that for the purpose of determining highest rate permitted by law, any non-principal payment (including, without limitation, Late Fees and other fees) shall be deemed, to the extent permitted by law, to be an expense, fee or premium rather than interest.  Any provision hereof, or any provision in any Loan Document that operates to obligate Borrower to pay interest in excess of such maximum effective lawful rate, shall be construed to require payment of the Maximum Rate only.

(m)     <u>Modification</u>.  This Note may be modified, amended, discharged or waived only by an agreement in writing signed by the party against whom enforcement of such modification, amendment, discharge or waiver is sought.

(n)     <u>Time of the Essence</u>.  Time is strictly of the essence of this Note and each and every term hereof.

(o)     <u>Negotiable Instrument</u>.  Borrower agrees that this Note shall be deemed a negotiable instrument, even though this Note may not otherwise qualify, under applicable law, absent this paragraph, as a negotiable instrument.

(p)     <u>Interest Rate After Judgment</u>.  If judgment is entered against Borrower on this Note, the amount of the judgment entered (which may include principal, interest, fees, Late Fees and costs) shall bear interest at the Default Rate.

(q)     <u>Relationship</u>.  Borrower and Holder intend that the relationship between them shall be solely that of creditor and debtor.  Nothing contained in this Note or in any of the other Loan Documents shall be deemed or construed to create a partnership, tenancy-in-common, joint tenancy, joint venture or co-ownership by or between Borrower and Holder.

(r)     <u>Waiver of Automatic Stay</u>.  TO THE EXTENT PERMITTED BY LAW, BORROWER HEREBY AGREES THAT, IN CONSIDERATION OF LENDER'S AGREEMENT TO MAKE THE LOAN AND IN RECOGNITION THAT THE FOLLOWING COVENANT IS A MATERIAL INDUCEMENT FOR LENDER TO MAKE THE LOAN, IN THE EVENT THAT BORROWER SHALL (A) FILE WITH

ANY BANKRUPTCY COURT OF COMPETENT JURISDICTION OR BE THE SUBJECT OF ANY PETITION UNDER ANY SECTION OR CHAPTER OF TITLE 11 OF THE UNITED STATES CODE, AS AMENDED (THE "**BANKRUPTCY CODE**"), OR SIMILAR LAW OR STATUTE; (B) BE THE SUBJECT OF ANY ORDER FOR RELIEF ISSUED UNDER THE BANKRUPTCY CODE OR SIMILAR LAW OR STATUTE; (C) FILE OR BE THE SUBJECT OF ANY PETITION SEEKING ANY REORGANIZATION, ARRANGEMENT, COMPOSITION, READJUSTMENT, LIQUIDATION, DISSOLUTION, OR SIMILAR RELIEF UNDER ANY PRESENT OR FUTURE FEDERAL OR STATE ACT OR LAW RELATING TO BANKRUPTCY, INSOLVENCY, OR OTHER RELIEF FOR DEBTORS; (D) HAVE SOUGHT OR CONSENTED TO OR ACQUIESCED IN THE APPOINTMENT OF ANY TRUSTEE, RECEIVER, CONSERVATOR, OR LIQUIDATOR; OR (E) BE THE SUBJECT OF AN ORDER, JUDGMENT OR DECREE ENTERED BY ANY COURT OF COMPETENT JURISDICTION APPROVING A PETITION FILED AGAINST BORROWER FOR ANY REORGANIZATION, ARRANGEMENT, COMPOSITION, READJUSTMENT, LIQUIDATION, DISSOLUTION, OR SIMILAR RELIEF UNDER ANY PRESENT OR FUTURE FEDERAL OR STATE ACT OR LAW RELATING TO BANKRUPTCY, INSOLVENCY OR RELIEF FOR DEBTORS, THEN, TO THE EXTENT PERMITTED BY APPLICABLE LAW AND SUBJECT TO COURT APPROVAL, HOLDER SHALL THEREUPON BE ENTITLED, AND BORROWER HEREBY IRREVOCABLY CONSENTS TO, AND WILL NOT CONTEST, AND AGREES TO STIPULATE TO, RELIEF FROM ANY AUTOMATIC STAY OR OTHER INJUNCTION IMPOSED BY SECTION 362 OF THE BANKRUPTCY CODE OR SIMILAR LAW OR STATUTE (INCLUDING, WITHOUT LIMITATION, RELIEF FROM ANY EXCLUSIVE PERIOD SET FORTH IN SECTION 1121 OF THE BANKRUPTCY CODE) OR OTHERWISE, ON OR AGAINST THE EXERCISE OF THE RIGHTS AND REMEDIES OTHERWISE AVAILABLE TO HOLDER AS PROVIDED IN THE LOAN DOCUMENTS, AND AS OTHERWISE PROVIDED BY LAW, AND BORROWER HEREBY IRREVOCABLY WAIVES ITS RIGHTS TO OBJECT TO SUCH RELIEF.

(s)     Acknowledgement By Guarantors.  The undersigned Guarantor of the Loan has acknowledged this Note below solely for purposes of confirming its obligations as more specifically set forth in the guaranty executed by such Guarantor in connection with the Loan.

**[remainder of this page is intentionally left blank]**

IN WITNESS WHEREOF, Borrower has executed this Note or caused it to be executed on its behalf by its duly authorized representatives, as of the day and year first above written.

**BORROWER:**

**NORDICA LANDING, LLC**, a Florida limited liability company

By: _____
Name: Charles E. Lee
Title: Manager


ACKNOWLEDGED AND AGREED:

_____
**CHARLES LEE**, an individual

# SCHEDULE 1

# DEFINED TERMS

(a) "*Adjustable Rate*" means the greater of: (i) the Index Floor and (ii) the Current Index, with such rate expressed as a decimal and rounded upwards, if necessary, to the next higher 1/100 of 1.0%.

(b) "*Alternative Rate Index*" means a replacement benchmark rate or index as determined by Lender, in Lender's reasonable discretion.

(c) "*Alternative Rate Spread*" means the sum of (i) the Initial Margin and (ii) the Alternative Rate Spread Adjustment.

(d) "*Alternative Rate Spread Adjustment*" means a spread selected in Lender's sole discretion that, when added to the Alternative Rate Index and the Initial Margin is approximately equivalent to the Adjustable Rate as in effect on the Rate Change Date immediately prior to the adoption of the related Alternative Rate Index.

(e) "*Current Index*" means the sum of (a) the published Index that is effective on the applicable Interest Determination Date (the "*Unadjusted Index*") plus (b) the Index Adjustment; provided, however, that if the Index is Term SOFR, if as of 5:00 p.m. (New York City time) on any Interest Determination Date, Term SOFR has not been published by the Term SOFR Administrator and an Alternative Rate Index with respect to Term SOFR has not occurred, then the Index utilized to determine the Current Index will be Term SOFR as published by the Term SOFR Administrator on the first preceding Business Day for which Term SOFR was published by the Term SOFR Administrator. With respect to the initial Adjustable Rate, the Current Index shall mean the sum of (a) the Index that is in effect on the date that is two (2) Business Days prior to the Effective Date (provided that such Index shall not be less than the Index Floor), plus (b) the Index Adjustment.

(f) "*Daily SOFR*" means a rate equal to the secured overnight financing rate as administered by the Federal Reserve Bank of New York (or a successor administrator).

(g) "*Index*" means, initially, Term SOFR; provided that, if an Index Transition Event and its related Index Replacement Date have occurred with respect to Term SOFR or the then-current Index, then the Index shall mean the applicable Alternative Rate Index determined by Lender to the extent that such Alternative Rate Index has become effective pursuant to the Loan Agreement.

(h) "*Index Adjustment*" means, with respect to determining Term SOFR or the Alternative Rate Index, as applicable, for each applicable Interest Period, a spread adjustment, or method for calculating or determining such spread adjustment (which may be a positive or negative value or zero) that has been selected by Lender; provided that after giving effect to the Index Adjustment, the Current Index shall not be less than zero.

(i) "*Index Floor*" means ten basis points (0.10%) per annum.

(j) "***Index Replacement Date***" means the date selected by Lender, upon prompt prior notice to Borrower, as the effective date for the transition to the Alternative Rate Index.

(k) "***Index Transition Event***" means any time Lender determines, in Lender's reasonable discretion, that Term SOFR is no longer readily available or is no longer appropriate for use in connection with its commercial loans generally, whether due to unavailability, lack of reliability as a measure of cost of funds, cessation of use in the general commercial lending market, or the requirements of any regulatory authority having jurisdiction over Lender or over the administration of Term SOFR.

(l) "***Initial Margin***" means three hundred thirty-five basis points (3.35%).

(m) "***Interest Determination Date***" means the second U.S. Government Securities Business Day prior to the first day of the applicable Interest Period for which Term SOFR is being determined.

(n) "***Interest Period***" means, each monthly period from, and including, the immediately preceding date payment was due under this Note (or, in the case of the first Interest Period under this Note, the effective date of this Note) to, but excluding, the date on which the current payment is due under this Note (or, in the case of the final Interest Period, the Maturity Date).

(o) "***Margin***" means the Initial Margin; provided that if an Index Transition Event and its related Index Replacement Date have occurred with respect to the London Interbank Offered Rate, then the Margin shall be the Alternative Rate Spread.

(p) "***Term SOFR***" means, for any Interest Period, the Term SOFR Reference Rate on the related Interest Determination Date, as such rate is published by the Term SOFR Administrator at approximately 5:00 a.m., Chicago time; provided, however, that if as of 5:00 p.m., New York City time on any Interest Determination Date the Term SOFR Reference Rate has not been published by the Term SOFR Administrator, then Term SOFR shall be the Term SOFR Reference Rate as published by the Term SOFR Administrator on the first preceding U.S. Government Securities Business Day for which such Term SOFR Reference Rate was published by the Term SOFR Administrator.

(q) "***Term SOFR Administrator***" means the CME Group Benchmark Administration Limited (or a successor administrator of the Term SOFR Reference Rate determined by the Lender in its reasonable discretion).

(r) "***Term SOFR Reference Rate***" means the rate per annum of a one-month forward-looking term rate based on Daily SOFR that is published by the Term SOFR Administrator.

(s) "***U.S. Government Securities Business Day***" means any day except for a Saturday, Sunday or a day on which the Securities Industry and Financial Markets Association recommends that the fixed income departments of its members be closed for the entire day for purposes of trading in U.S. government securities.